SAMUEL SHIELDS, Adm'r, *v.* J. T. ALSUP *et al.*

1. CHANCERY PRACTICE AND PLEADINGS. *Administrator's settlement.* Where an administrator makes a settlement in the county court after giving notice required by law, and settlement is confirmed by the court, and then files a bill to sell land of intestate to pay indebtedness, alleging exhaustion of assets, the heirs may by answer, as well as by cross-bill or original bill, contest the settlement. If the heirs are *sui juris*, they must point out in their answer specifically the errors upon which they rely, and they cannot take advantage of any error in the settlement not specifically pointed out.

2. ADMINISTRATOR. *Retainer. Statute of limitations.* An administrator who has a claim against his intestate must, within two years and six months, if he has funds sufficient in his hands, manifest his intention of a retainer, by settlement with the county court clerk, or some other equivalent act of appropriation, or his claim will be barred.

FROM GRAINGER.

Appeal from the Chancery Court at Rutledge. H. C. SMITH, Chancellor.

J. T. & J. K. SHIELDS and J. W. YOE for complainants.

J. P. SWAN and J. C. HODGES for defendants.

FREEMAN, J., delivered the opinion of the court.

This bill was filed February, 1874, and seeks to subject lands descended, or charged to have descended, to the heirs of the intestate, to the payment of an ascertained balance of debt due from the estate, as

shown by the final settlement made by the adminis-
trator with the clerk of the county court of Grainger
county, the settlement completed in December, 1873,
reported as above, and confirmed by the court, except
as to the amount of compensation allowed the admin-
istrator.

The county court, on its own motion, no excep-
tions being made by parties interested, refused to con-
firm the report of the clerk, allowing $500 as reasonable
compensation for services, and reduced this sum to
three hundred dollars, from which decree the adminis-
trator prayed and perfected an appeal to the chancery
court, which was pending in that court when this bill
was filed. That appeal is asked to be heard with
the present bill, as its determination would be neces-
sary to determine the amount of indebtedness; if the
county court decree is affirmed, the amount will be
$200 less than complainant claims in his bill as the
true amount due.

The settlement showed $777.17 due the administra-
tor, he having produced vouchers showing he had paid
this sum, together with what was due him for ser-
vices. This sum would be reduced by the amount
of $200, if the decree of the county court should be
sustained, as we have stated. This sum is increased
by a decree in favor of one Smith to $1,464.32.

It is necessary to state here, that Henry Alsup
left his widow, Jane Alsup, and R. S. Alsup, R. T.
Alsup, James T. Alsup and Nancy Parrott, his chil-
dren and heirs at law. Mrs. Parrott has died since
the intestate, and her heirs are parties to this bill.

Robert T. Alsup had, before this bill was filed, sold and conveyed his share of the real estate of his ancestor to J. D. Curl, who is also made a defendant. James T. had also made a deed of gift of his land descended to him, to his wife and children. Other conveyances possibly have been made, but all conveyances are charged to have been with notice of the indebtedness of the estate, and the bill claims, consequently, subject to the debts of the ancestor, in this proceeding. They are all prayed to be set aside as fraudulent.

Curl, the purchaser from R. T. Alsup, and the other two sons, together with some minor grandchilden of intestate, are the parties contesting with complainant in this case.

The master was ordered to take and state an account of the assets that came, or should have come, to the hands of the administrator, his disbursements, and then generally to report on all matters that counsel might deem necessary to the decision of the questions involved in the case.

On the coming in of this report, several exceptions were filed by respondents, which present the main questions to be decided in the case.

In reference to the contested question, by appeal from the county court, of compensation to the administrator, the master reported the sum of $500 as reasonable for the services rendered, as shown by the proof in this case. On examination we find this item was not excepted to by respondents, and the report confirmed as to that without objection. It can-

not, therefore, be considered by us, and is out of the case.

We now proceed to examine the main questions presented in the record, and urged in argument before us.

The first exception presented by respondents is, because the master, in taking the account ordered, has charged interest on all claims collected from the time due, and it is claimed, should have charged interest up to the time when collected, and then charged interest on both principal and interest up to the date of filing the account.

This bill, as we will show in an after part of this opinion, is filed on the footing of the settlement made in the county court, which is *prima-facie* evidence, and makes out the case of balance there shown, until errors are specified and pointed out. The only errors pointed out in the answers of respondents are such as we shall hereafter discuss; but no such error as is indicated by the exception is hinted at in any answer of defendants. The account should have been taken as shown by that settlement, and the only matters open for investigation were the matters specified in the answers of respondents.

This was not a bill by distributees for an account by the administrator, as it seems to have been treated, but a bill by the administrator to sell land, alleging an exhaustion of personalty in the payment of debts— a settlement with the county court, showing a balance due him, which *prima-facie* was correct, and was to be taken as correct till errors were pointed out and

then proven. The clerk of the county court had calculated the interest, and shown the balance. The respondents only point out certain specific objections to that settlement, and these were all that were legitimate matters of consideration. Among them is found no objection as to the mode of calculating the interest, therefore the account as shown in that settlement stands, except as to specified errors. We now proceed to examine the question thus raissd.

The questions in this case are: First, whether the respondents under their pleadings are in position to go behind the settlement in the county court, there being no cross-bill, but all defenses, and equities presented alone by way of answers?

Second. Conceding they may, whether the allowance of a debt due the administrator on a note for one thousand dollars, dated July 19, 1860, due one day after date, should have been allowed in his favor?

This proceeding is under the act of 1827, ch. 54, Code, sec. 2267, providing that "where an executor, not authorized by will to sell and convey real estate, or an administrator has exhausted the personal estate of the deceased in the payment of his debts, leaving just debts or demands against him unpaid, or paid by the representative out of his own means, and the deceased died seized and possessed of real estate, the chancery or circuit court of the district or county where the same or any portion of it lies, may, on petition of the representative, or any *bona fide* creditor whose debt remains unpaid, decree the sale of such land or such portions thereof as may prove least in-

jurious to the heirs and legal representatives, and as may be sufficient to satisfy the debts or demands set forth in the bill or petition, and shown to exist."

The next section, however, provides that before such decree shall be made, it shall be shown that the personal estate has been exhausted in payment of *bona fide* debts; and that the debts or demands for which the sale is sought, are justly due and owing to creditors, or the representative for advances out of his own means to pay just demands against the estate.

The reason and policy of this act are given by this court in the first case coming before it under this act, and are thus stated: 1st. To prevent accumulation of costs by numerous separate suits at law. 2d. To prevent sacrifice of the estate in satisfying the first few judgments that might be obtained. 3d. All parties being before the court, an account can be taken of all the debts, with the value of the real estate, the sale could be made under the direction of the court so as to preserve the interest of both heir and creditor. It was also held in this case, that it was proper to enjoin all other proceedings by creditors to enforce their claims, on the filing of the bill.

It is clear, however, that the proceeding is one to subject the lands of the heir, and he is entitled to be made a party defendant, the proceeding being void if this is not done. *Crippen* v. *Crippen*, 1 Head, 128; *Estes* v. *Johnson*, 10 Hum., 223. When so made parties, it follows of necessity that these defendants may in that character, and by pleadings appropriate to that character, contest all the facts charged essential to re-

33—VOL. 5.

sist the purpose of the bill, to-wit, the exhaustion of the personalty, the justness of the debts for which the land is sought to be sold, and may show any facts that tend to maintain their defense so made. In fact, the party complainant in such a case is compelled affirmatively to make out the case required by the statute, if contested, before a decree can be made for the sale. These facts must be made to appear, says the statute, "before making such decree." This would seem too clear for argument; for why make the heirs parties to a suit the result of which is to depend on certain specified facts being made to appear, if that party cannot, as such, show they do not exist? If the heir is compelled, after being made a party, to file an additional affirmative bill to maintain his defense in any case under the statute, it would be an idle ceremony to make him a party at all.

But it is insisted that, be this as it may in the ordinary case provided for by the statute, there has been in this case a regular settlement made by the administrator in the county court, which has been confirmed by that court, after notice to the heirs, and that this is *prima facie* conclusive on these parties, and that this bill is filed on the footing of a stated account, and can only be met by either a cross-bill or an original bill, praying for a general account, or for relief against particular items—in other words, by surcharging and falsifying the account, as stated.

That this is the general rule as to stated accounts in ordinary proceedings, is conceded; but we think under the statute, all such defenses may be made by

answer as serve to meet the essential allegations of the bill, for the reasons we have stated. It is true, that under the Code, sec. 2298, notice is to be given to the "parties interested and resident within the county, or their agent or attorney, if they reside elsewhere, of the taking of the account," and it is also provided, sec. 2302, that any person interested may except to the account, may appeal to the court, and may show, sec. 2303, that the inventory was not complete; but when all this has been done, and the account confirmed, and an appeal provided for from the action of the court, by next section, 2304, it is provided, this settlement, when so made and recorded, shall be *prima facie* evidence in favor of the accounting party.

Taking all these provisions together, they simply provide the evidence of a *prima facie* case against the heir; so that when a proceeding is instituted in a case like the present, the administrator who has made such settlement, and puts himself on this basis in his bill, has made out his case, until objection is taken by the heir, and errors in the settlement pointed out in the answer if he be *sui juris*, but such errors or objections as may exist, may be as well shown by the answer as in any other way. In such a case, as to parties adult, the errors however should be pointed out, the objections taken in the answer, so that the administrator, or creditor it may be, shall be notified of the grounds of attack upon what the law has made a *prima facie* case in his favor—that is, a good ground for a decree, until the contrary appear. The contrary, in other words, must be alleged and shown

as to parties *sui juris,* · at least, or else the complainant, · on the footing of his settlement, would be entitled to a decree.    This we think the result of a fair construction of the provisions of our law on this subject.

Assuming. these principles as settled, we look to the answers of respondents to see what errors they have pointed out in said settlement, and what attack is made on its correctness.

Curl, who had purchased of R. T. Alsup, insists that he was not notified of the time of the settlement. While the statute, sec. 2298, does not specify who shall be deemed " parties interested," for the purpose of the notice therein required, yet sec. 2303 does specify who " persons interested" are in reference to such proceeding, to-wit, a " legatee, distributee, widow or creditor," and we do not think notice of the settlement is required to be given to any others.    We may . say briefly, that the only objection definitely made in the answer is to the allowance of the claim in favor of the complainant, known as the $1,000 note.    There are general statements that the settlement is unjust and unwarranted—debts paid that were barred by statute of limitations, and the like, but nothing is pointed out so as to show any specific error.    .

Without citing from the answers, we may say that the issue is sharply defined against this claim of the administrator, and presents the following defenses to it, and objections to the settlement allowing it:  that it was barred by the statutes of limitations of two years and six months, of six years, and on the part

of the minors and part of the other respondents, the statute of seven years.

The facts on which these objections are based, are briefly as follows:

The administrator held this note at the death of the intestate, who died in July, 1866. Administration was granted in October, 1866. His settlement was made in December, 1873, when this claim was allowed, with interest calculated by the clerk, making upwards of $1,500, and in addition it was shown or claimed to have been what is called a "gold note," that is, we take it, as stated in the settlement, a note given for "gold loaned," and then an item of charge is given in these words: "Add 12½ per cent. difference between gold and currency, $188.90, which makes the debt, as thus allowed, $1,700.16.

The note, however, does not so express on its face, but is a simple note for one thousand dollars, payable one day after date, for value received. So that we have the fact clearly shown from the settlement, that complainant then presented this note, as a claim against the estate, unpaid, on which he claimed and was allowed, as premium on gold, $188.90, as of that date.

On the contrary, in his deposition he swears, in answer to the question when said note was paid, or when did he retain the amount of the same as payment thereof, that "soon after he administered he believed the estate would pay its liabilities, outside of lawsuits, and he used the assets in paying the above note, also a running account which he held, and other

debts." He then specifies the Boil debt as having been collected and thus appropriated in 1867, and that he used the assets in paying off his debts within two years and six months of the time he administered; and so the case stands on these facts for solution.

Giving the most liberal construction to the evidence on the face of the settlement in connection with the testimony of complainant referred to, it can only amount to this, that within the two years and six months he received and probably used money enough to pay and discharge his debt, and that, as now advised, it was then paid, as he believes. But it is equally clear that there was no act done by which there was an appropriation of this money to this purpose, nor anything more than receipt of the money—no settlement of his accounts in that period in which this credit was claimed, nor cancellation of the note, nor credit, as far as shown, of the running account, which last item, however, is not contested. On the contrary, the facts on the face of the settlement show the appropriation was then for the first time made, and the debt settled as then due and unpaid.

The simple question, then, is, whether the receipt of money from assets of the estate by the administrator within the period of two years and six months, the time when all claims are to be presented by our law, amounts of itself to payment of his debt, and completes the retainer or appropriation, with nothing more. On this question there will be found something of difficulty, if not impossibility, in reconciling

the principle that underlies and is the basis of this doctrine of retainer as stated in some of our cases,— certainly so, if we should undertake it on the assumption that all that has been said in our opinions is to be held authoritative and as adjudging the rules to be applied in such cases.

The doctrine of retainer is a familiar one in the common law, being classed with those exceptional remedies arising by mere operation of law. It was based on the idea of advantage to the personal representative, and that it would be absurd and incongruous that he should sue himself, or that the same hand should at once pay and receive the same debt. Therefore, says Mr. Williams (work on Executors, p. 894, vol. 2), "he *may appropriate* a sufficient part of the assets in satisfaction of his demand, otherwise he woud be exposed to the greatest hardship."

After citing the common law authorities on this question in the case of *Smith* v. *Watson*, 8 Hum., 340, Judge Green thus sums up the result: "These authorities establish that the reception of assets by an executor extinguishes his debt. He holds the goods in satisfaction of his debt, and not as executor. The debt is paid; the operation of law being equivalent to a recovery by execution. If this be so, it is plainly impossible that the debt should be revived by any subsequent act of the executor. If he pay out the assets, and do not actually retain for his own debt, it is his folly, for, by a conclusion of law, he is held to have retained; for, as the court say in *Dorchester* v. *Webb*, Cro. Cas., 373, as he *may* retain,

he *shall* do so. There is no act to be done by an executor to constitute retainer; no volition on his part as to whether he will retain or not; but the moment he receives assets sufficient to discharge his debt, the law applies them in payment, and the debt becomes extinct *instanter.*" So it was held at that time. However, we add, even at common law, that *choses in action,* though counted loosely sometimes as assets *per se* in opinions, and properly in some respects, yet, as said by Mr. Williams, vol. 2, p. 1420, "the executor or administrator is not to be charged with them till he has received the money," or it is shown there has been culpable negligence, collusion or fraudulent delay in collecting; in other words, he is chargeable because, by due diligence, he ought to have received the money. *Ruggles* v. *Sherman,* 14 John R., 446—cited, note 1, p. 1420, W. on Ex'rs. Following in this line, we so far modified and overruled the case of *Smith* v. *Watkins,* 8 Hum., 341, as to hold, that the goods of the testator or intestate being required by our law to be sold and converted into money by the representative, that he could not be held to have retained for his debt until the money was received by him sufficient to satisfy his debt. 7 Heis., 331. In the case of *Smith* v. *Watkins,* the principle was rigidly applied, and the logic of the rule pushed to the extent that, the executor having received a negro man worth $650, another negro worth $250, a watch worth $125, and other assets worth $135, and had paid out in money to other creditors $584, and had handed over intact to his successor, an

administrator *de bonis non,* the negroes, watch and other assets not paid out in discharge of debts, nevertheless his debt for $1,237, due by note, was held paid and extinguished, though clearly contrary to the fact. In the case from 7 Heiskell we held that the opinion in *Smith* v. *Watkins* was not sustained by sound authority or principle, that the debt was *ipso facto* extinguished by receipt of property or assets equal to the debt, citing from opinion of McLean, J., in the Supreme Court of the United States, the proposition that "it is a right which the executor may postpone, if in so doing he does no injury to the estate, and such a question can only be made by the heirs or devisees," and "that the debt was not thus absolutely extinguished, but the right of action gone, because a man cannot sue himself." *Ib.,* 334. Judge McLean is cited further as saying: "But can the principle be extended so as to extinguish the right to retainer where assets equal to the debt have been received and applied to the payment of other demands? Such a rule would be contrary to reason and justice, and is not believed to be the law."

If we enforced the doctrine laid down by Judge Green in *Smith* v. *Watkins,* we would have the case of payment by operation of law conclusively made out, and a debt due the administrator paid, the estate relieved of it, by simple receipt of assets or property sufficient in value to discharge it, when at the same time it might be that, in fact, these very assets had been honestly and faithfully appropriated to the payment of other *bona fide* debts of the estate, and thus

we would have two debts paid with the same property—the one by operation, and in this case, fiction of law; the other in fact, by payment to the creditor. This would be pushing a technical logic, as we thought and said in the case in 7 Heis., 334, to an absurd extent, and make the law, intended for the benefit of the representative, work the grossest injustice.

The principle as laid down in this case is, that it is optional with the administrator to apply the money to his own debt, provided he does no injury to the estate thereby, and that this option must be exercised within the two years and six months, the time of the bar of the statute of limitations in favor of personal representatives by our law, provided the money came into his hands in this time; and that he must exercise his right of retainer of the money in his settlement with the county court within the period of the statute of limitations, as he was bound to plead this statute as to other creditors, and so it must be applied in this form and by this process to his own debt. *Ibid.*, 335. In this we followed the principle announced in the cases in 10 Hum., 301; 3 Sneed, 607; 3 Head, 662; *id.*, 403. We do not say nor hold that there is or could be no other mode by which a retainer could be evidenced, as by canceling a note, or crediting a book account, but think this or the like would be sufficient. But we do hold, where there is no evidence of this or the like acts appropriating the money by way of retainer, then some act must be done evidencing the purpose of retainer,

and if so done, it would appear and ought to appear in the settlement. We further held, that if the representative had not received the money within this period to discharge his debt, as he could not sue himself, and could not delay to sue at his own special instance and request, then he might retain when the money came into his hands, unless the debt was barred by the general statute of limitations.

While this requirement that the retainer shall be manifested within the two years and six months by settlement with the county court clerk or by some other equivalent act of appropriation, may be somewhat arbitrary, yet we do not see that a better practical rule can be adopted, nor one that can be more readily conformed to. We must either follow the old rule of arbitrary appropriation regardless of the truth of the case, or the one of option, so as not to do injury to the estate; and if the latter, then some mode of showing that option is desirable, and it can be readily done by compliance with the requirement of the law; or in some other unequivocal mode, and making due settlement of his accounts, when his debt will be credited to him as paid, and the assets thus shown to have been properly appropriated by him. We followed and applied the principle of the above cited cases in a case at last term at Jackson, where the contest was very earnestly made, and do not feel authorized to overrule the principle thus recognized simply to meet what may be a hard case.

In this case we may add, on the facts as shown by the administrator in his account rendered and pre-

pared by himself, it is pretty clear, if not demonstrated, that he did not exercise his option to retain until the time of his settlement, though he thinks he did pay his debt when he comes to give his deposition. He has, as we have seen, not only calculated the interest up to the day of settlement, but has on that sum, including principal and interest, claimed and received the difference between that sum in currency and gold at the rate of $12\frac{1}{2}$ per cent., making, on $1,511.26, the sum of $188.90. It is impossible, on this statement, to say that the administrator in making this settlement treated or recognized this claim as having been paid in 1867, as is his after theory of the case, no doubt honestly entertained, but the facts do not sustain it. It is certain he treated the debt, not as paid in 1867, but at the date of the settlement. The calculation of the difference between gold and currency is on the debt and the accumulated interest up to that date. If paid in 1867, the difference at that date on the amount then due would have been the statement shown in the settlement.

The result is, that the chancellor's decree must be affirmed as to this claim, and it held barred by the statute, both of two and six years. The decree will be modified in the other matter as to interest as indicated in a previous part of this opinion.

The question of counsel fees is not before us, as the appeal is taken alone by complainant, and the respondents raising that question by exception, which has been overruled by the court below, they have not chosen to appeal, and it must stand. The appeal of

complainant in such a case cannot be held to bring up a ruling on an exception that was in his favor. The decree ordering the reference settled nothing as to counsel fees—in fact, adjudged nothing—and was one of that class of decrees so often reprobated by this court, where everything is to be reported on and adjudged afterwards. The decree is affirmed as to this item. A decree will be drawn in accord with this opinion.

One-third of the costs of this court will be paid by defendants, balance by complainant.